UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-295-MOC

| | |
|---|---|
| CEDRIC MCILWAIN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NICHOLAS HENSLEY, et al., )<br>)<br>Defendants. )<br>) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment [Doc. 63].

I.   **BACKGROUND**

The incarcerated Plaintiff, proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Avery-Mitchell Correctional Institution.[1]  The unverified Complaint passed initial review against Defendants Nicholas Hensley, Ashley Robertson, and Tyler Silver for the use of excessive force.[2]  [Doc. 1: Complaint; Doc. 10: Order on Initial Review].  The Plaintiff seeks damages and a jury trial.

The Defendants have now filed a Motion for Summary Judgment.  [Doc. 63: MSJ].  The Court notified the Plaintiff of the opportunity to respond to Defendants' Motions and to present evidence in opposition pursuant to Fed. R. Civ. P. 56.  [Doc. 70: Roseboro[3] Order].  The Plaintiff filed a Response and materials including an Affidavit opposing summary judgment.  [See Doc. 72:

---

[1] The Plaintiff's address of record is at the Alexander Correctional Institution.

[2] The Plaintiff's Complaint is unverified, and cannot be considered on summary judgment as a forecast of evidence.

[3] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

MSJ Resp.; Doc. 73: Plaintiff's Affid.]. The Defendants have not replied and the time to do so has expired. [See July 7, 2025 Text-Only Order]. Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be

2

Case 1:23-cv-00295-MOC     Document 78     Filed 07/22/25     Page 2 of 11

considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

### III.    FACTUAL BACKGROUND

The relevant forecast of evidence viewed in the light most favorable to the Plaintiff shows the following.

Officer Nicholas Hensley was conducting routine locker searches on April 14, 2023. [Doc. 66-8: Hensley Decl. at ¶ 2]. Hensley arrived at Plaintiff's bunk at around 6:00 PM. [Doc. 66-8: Hensley Decl. at ¶ 3]. Hensley asked to search the Plaintiff's locker and the Plaintiff refused. [Doc. 66-8: Hensley Decl. at ¶ 3]. Plaintiff started putting on his shoes. [Doc. 73: Plaintiff's Affid. at 1].

Hensley called for backup after giving the Plaintiff several orders and telling him that he needed to comply. [Doc. 66-8: Hensley Decl. at ¶ 3].

Sergeant Tyler Silver and Officer Ashley Robertson responded to the Plaintiff's cell. [Doc. 66-9: Silver Decl. at ¶ 3]. Silver directed the Plaintiff to submit to a locker search at least three times. [Doc. 66-9: Silver Decl. at ¶¶ 3-4]. The Plaintiff refused to comply and cursed at officers. [Id.; Doc. 66-8: Hensley Decl. at ¶ 4]. Plaintiff locked his locker and he began going through a white shipping bag; officers later found drugs in the Plaintiff's locker and a homemade knife in his shipping bag. [Doc. 66-8: Hensley Decl. at ¶ 4; Doc. 66-9: Silver Decl. at ¶¶ 4, 10]. Officer Hensley and Sergeant Silver applied a short burst of pepper spray to Plaintiff's face,[4] and Hensley restrained him. [Doc. 66-9: Silver Decl. at ¶ 4].

Officers Robertson and Hensley began escorting Plaintiff out of the housing block for transport to restrictive housing. [Doc. 66-8: Hensley Decl. at ¶ 4]. Robertson and Hensley brought the Plaintiff to a hallway leading to the unit exit where they allowed Plaintiff to lean against a wall. [Doc. 66-8: Hensley Decl. at ¶ 5]. Meanwhile, Sergeant Silver returned to his office to call for additional officers to assist in escorting the Plaintiff to restrictive housing. [Doc. 66-9: Silver Decl. at ¶¶ 4-5]. Silver then returned to the hallway where Robertson and Hensley had taken Plaintiff. [Doc. 66-9: Silver Decl. at ¶ 5].

Plaintiff was then directed to proceed through the exit but the Plaintiff did not immediately comply; he eventually started walking while using profanity. [Doc. 66-8: Hensley Decl. at ¶ 5]. When they reached the exit door, the Plaintiff turned back towards Roberston and Hensley and

---

[4] The Court need not accept Plaintiff's conclusory statement that he was pepper sprayed "for no reason." [Doc. 73: Plaintiff's Affid. at 1]; see Brown v. Flowers, 196 Fed. Appx. 178, 182 (4th Cir. 2006) (vague and conclusory affidavits are insufficient to stave off a summary judgment motion).

began spitting at them.[5] [Doc. 66-8: Hensley Decl. at ¶ 5; Doc. 66-9: Silver Decl. at ¶ 6]. Silver, Hensley, and Robertson used "minimal" force to get Plaintiff through the door. [Doc. 66-8: Hensley Decl. at ¶ 5; Doc. 66-9: Silver Decl. at ¶ 6].

Once outside the exit, the Plaintiff continued to disobey and pull away despite officer demands to stop resisting. [Doc. 66-8: Hensley Decl. at ¶ 6]. Plaintiff leaned his body forward, increased his speed, and tried to break away from the officers' grasp. [Doc. 66-8: Hensley Decl. at ¶ 6; Doc. 66-9: Silver Decl. at ¶ 7]. The officers brought the Plaintiff safely to the ground to regain control.[6] [Doc. 66-8: Hensley Decl. at ¶ 6; Doc. 66-9: Silver Decl. at ¶ 7]. Officers then brought the Plaintiff to his feet and proceeded to restrictive housing without further incident. [Doc. 66-8: Hensley Decl. at ¶ 6; Doc. 66-9: Silver Decl. at ¶ 7]. Silver and Hensley had neither ill will towards Plaintiff nor any desire to harm him. [Doc. 66-8: Hensley Decl. at ¶ 6; Doc. 66-9: Silver Decl. at ¶ 11].

A nurse conducted a restrictive housing screening of Plaintiff approximately three hours after the use of force incident. [See Doc. 68-2: MSJ Ex 4B (April 14, 2023 21:32 Clinical Encounter)]. The Plaintiff stated that he hurt his neck and back, and that he thought he had broken bones in his face from an altercation with custody. [Id.; Doc. 73: Plaintiff's Affid. at 1 (stating that he suffered loss of hearing in right ear, physical pain, bruises on his head, and emotional distress)]. Upon examination, the Plaintiff did not appear to be in pain or distress, and he had no visible injuries other than a red mark on the front side of his scalp. [Id.]. Palpations of the Plaintiff's back, neck, and face elicited no pain response, there was no visible bruising, and no impairment of the

---

[5] The Plaintiff's verified statement that, while being escorted outside in front of Avery Unit, "they used [Plaintiff's] head to shield the doors banging [his] head against all the doors" will be addressed in the discussion section, *infra*. [Doc. 73: Plaintiff's Affid. at 1]; see Scott, 550 U.S. at 380.

[6] The Plaintiff's verified statement that Silver "threw [him] to the ground" at which point Robertson, Silver, and Hensley "severely punched [him] with closed fists," will be addressed in the discussion section, *infra*. [Doc. 73: Plaintiff's Affid. at 1]; see Scott, 550 U.S. at 380.

5

Plaintiff's movement. [Id.]. The Plaintiff was referred to mental health and he was instructed to follow up with sick call as needed. [Id.].

The Plaintiff pleaded guilty to disciplinary infractions for substance possession, weapon possession, and using profane language. [See Doc. 67-2: MSJ Ex 1E (Disciplinary Infraction Report)].

The Plaintiff was transferred to the Marion Correctional Institution where he received medical and mental health screening on May 2, 2023. [Doc. 68-3: MSJ Ex 4C (May 2, 2023 Health Screen, Clinical Encounter)]. The Plaintiff appeared well and expressed no complaints other than questioning why he was being placed in "seg." [Id. at 7]. On May 31, 2023, the Plaintiff was seen on a sick call for bad headaches but he refused to be seen, stating that he did not need medical attention at that time. [Doc. 68-4: MSJ Ex 4D (May 31, 2023 Clinical Encounter)]. The Plaintiff was seen again on June 9, 2023 for ear pain and headaches. [Doc. 68-5: MSJ Ex 4E (June 9, 2023 Clinical Encounter)]. Tenderness around Plaintiff's ear and impacted ear wax were noted; Plaintiff was provided with ear drops and ibuprofen, and he was instructed to use sick call for follow-up if needed. [Id.]. The Plaintiff was seen again on sick call on June 15, 2023, at which time he stated:

> I got into an incident two months ago and I have had hard time hearing. I got assaulted at Avery Mitchell on April 14th and hit by an officer. I was having headaches but they are gone now. Now I just have a hard time hearing on that right side. They gave me some ear wax drops but they aren't helping, I can't hear good.

[Doc. 68-6: MSJ Ex 4F (June 15, 2023 Clinical Encounter)]. Ear wax made it impossible to examine Plaintiff's tympanic membrane, so the Plaintiff was provided with pain medication and he was scheduled for ear irrigation. [Id.; Doc. 68-7: MSJ Ex 4G (June 20, 2023 Clinical Encounter by Dr. Keven Chung)]. The Plaintiff's ears were irrigated on June 23, 2023 after which his examination was normal. [Doc. 68-8: MSJ Ex 4H (June 23, 2023 Clinical Encounter)].

Video footage from April 14, 2022 shows that the following events transpired in the prison

6

hallway:[7]

| | |
|---|---|
| 6:18:06 | Officers Hensley and Robertson escort Plaintiff, whose hands are cuffed behind his back, into the hallway without Plaintiff contacting the door. |
| 6:18:15 | The officers stop in the hallway and Plaintiff rests his head on the wall, near a second door. |
| 6:21:53 | Hensley and Robertson begin escorting Plaintiff towards the exit door as a third officer enters the hallway. |
| 6:22:02 | The escort pauses at a third door, leading outside, in shadow. The door then opens and the escort proceeds outdoors. |
| 6:22:07 | The Plaintiff moves to the right and officers place the Plaintiff on the ground as additional officers arrive. |
| 6:22:40 | The Plaintiff is brought to his feet and the escort continues. |

[Doc. 66-4: MSJ Ex 4 (manually filed video exhibit)].

## IV. DISCUSSION

### A. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the

---

[7] The video footage depicts an overhead view of the hallway including a door leading from the housing unit, a second door on the opposite side of the hall, and a third door leading outside. Some of the incidents transpiring outside the hallway are visible through windows in the walls and doors.

force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. Furthermore, the Supreme Court has made clear that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). Officers are owed "wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

The forecast of evidence demonstrates that the Plaintiff refused to comply with repeatedly orders to submit to a locker search and that Defendants Hensley and Silver applied a brief burst of pepper spray to Plaintiff's face to gain control of him and to restore order, without any ill will or intent to harm him. [See Doc. 66-8: Hensley Decl. at ¶ 6; Doc. 66-9: Silver Decl. at ¶ 11]. The Plaintiff's subjective belief that the use of pepper spray was unjustified fails to demonstrate the

8

existence of a genuine dispute of material fact that this use of force was excessive. See Shiheed, 802 Fed. App'x at 767; see also Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation").

The forecast of evidence further demonstrates that the Plaintiff was escorted into a hallway without his head contacting two doors he passed, and that he was then escorted outside where he was brought to the ground to regain control over him after he began resisting and spitting on officers. [Doc. 66-4: MSJ Ex 4; Doc. 66-8: Hensley Decl. at ¶ 6; Doc. 66-9: Silver Decl. at ¶ 7]. The view of Plaintiff exiting the third door, leading outside, is shadowed such that it is impossible to determine whether the Plaintiff's head contacted that door. However, the remainder of the video renders his allegation that the Defendants "bang[ed] his head against *all* the doors" so blatantly contradicted by the video that no reasonable jury could believe it. [Doc. 73: Plaintiff's Affid. at 1] (emphasis added); see Scott, 550 U.S. at 380. The video also conclusively refutes the Plaintiff's contention that the Defendants "threw" him to the ground then "severely punched [him] with closed fists" while he lay defenseless in restraints such that no reasonably jury could believe it. Id.; id. Moreover, the Plaintiff's undisputed medical records reflect that he had no physical injury following the incident except for a red mark on his scalp, and that the pain and hearing problems that he subsequently experienced were attributable to impacted earwax. [See Doc. 68-2: MSJ Ex 4B; Doc. 68-7: MSJ Ex 4G]. The Plaintiff has, therefore, failed to demonstrate the existence of a genuine dispute of material fact that the Defendants used excessive force.

The Plaintiff further alleges that the Defendants failed to protect him from assault. [Doc. 1 at 3]. However, there is no forecast of evidence that any Defendant used more force than was

9

reasonably warranted by the Plaintiff's resistant and aggressive behavior as discussed *supra*, or that any Defendant failed to prevent other officers from violating the Plaintiff's rights in this regard. See Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 420 (4th Cir. 1996) (absent any underlying use of excessive force, there can be no bystander liability).

The Defendants' Motion for Summary Judgment for violating the Plaintiff's Eighth Amendment rights will, therefore, be granted.

### B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

As discussed *supra*, the Plaintiff has not presented a forecast of evidence that any Defendant violated his constitutional rights. As such, summary judgment for the Defendants would also be proper on this ground.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted and this action is dismissed with prejudice.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 63] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE.**

The Clerk is respectfully instructed to enter a Clerk's Judgment in favor of the Defendants, and close this case.

**IT IS SO ORDERED.**

Signed: July 22, 2025

Max O. Cogburn Jr
United States District Judge